IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY L. MACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   12-cv-0986-MJR-SCW |
| | ) |
| SAMUEL NWAOBASI, | ) |
| MAGID FAHIM, and | ) |
| JOHN SHEPHERD, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

*Pro se* Plaintiff Henry Mack is currently in custody at the DeKalb County (Illinois) Jail. On September 11, 2012, he filed this § 1983 civil rights claim, broadly alleging deliberate indifference to various medical conditions in violation of the Eighth Amendment's proscription against cruel and unusual punishments. Several Defendants were dismissed on § 1915A threshold review, several more because Plaintiff did not exhaust administrative remedies against them, and Plaintiff's claims against Defendants Nwaobasi, Fahim, and Shepherd survived. The case is before the Court on those Defendants' Motion for Summary Judgment (Doc. 94). Plaintiff has responded (Doc. 101), Defendants have replied (Doc. 106), and the motion is ripe for ruling. For the reasons explained below, the Court **GRANTS (Doc. 94)** Defendants' Motion for Summary Judgment.

### FACTUAL BACKGROUND[1]

---

[1] Because this case is at the summary judgment stage, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, Plaintiff.

Plaintiff filed suit in September 11, 2012, alleging (for purposes relevant here) Defendants acted with deliberate indifference in treating rectal bleeding and pain in Plaintiff's hips and shoulder. Specifically, Plaintiff complained of a delay in treating pain in his hips and providing him with a low bunk permit, a delay in treating his complaints of blood in his stool, and a failure to treat pain in his shoulder caused by a fall on July 15, 2011.

Plaintiff had transferred to Menard Correctional Center on March 18, 2009 (Doc. 95-1, 9). Prior to arriving at Menard, Plaintiff had suffered from arthritis in his hips due to a gunshot wound sustained in the late 1980s (Doc. 1 at ¶¶ 17-18). Plaintiff was seen by Defendant Nwaobasi on March 3, 2011, for his hip pain (Doc. 95-1 at 11-12; 95-2 at ¶ 2). At that time, Plaintiff explained his history of pain in his hips, including the previous gunshot wound and bone graft he had received as a part of his treatment (*Id.*). Nwaobasi ordered x-rays for Plaintiff's hips (*Id.* at p. 12; 95-2 at ¶ 2). Nwaobasi further prescribed Plaintiff Motrin (i.e., ibuprofen) and a muscle relaxer called Robaxin (Doc. 95-2 at ¶ 2; 95-1 at 13; 95-5 at 1).

Plaintiff saw Defendant Fahim on March 31, 2011 (Doc. 95-1 at 13–14; Doc. 95-5 at 2–3). Fahim read the results of Plaintiff's X-rays, noting narrowing of the joint spaces in Plaintiff's hips (Doc. 95-5 at 2–3; 95-3 at ¶ 2). The X-ray also noted moderate osteoarthritis in both hips (Doc. 95-5 at 2). Fahim provided Plaintiff with a low bunk permit and prescribed Mobic (a non-sterodial anti-inflammatory pain medication) as Plaintiff indicated that Motrin upset his stomach (Doc. 95-5 at 3; 95-3 at ¶ 2; 95-1 at 14–15). Dr. Fahim also performed an abdominal exam; his findings

were normal (Doc. 95-3 at ¶¶ 2-3). Plaintiff testified that he also informed Fahim about blood in his stool, and that Fahim told him that it was probably caused by hemorrhoids. Fahim directed Plaintiff to drink more fluids (Doc. 95-1 at 15–16).

Plaintiff, complaining of blood in his stool, saw Nwaobasi again on April 22, 2011 (Doc. 95-2 at ¶ 3; 95-5 at 4). Plaintiff informed Nwaobasi he had no family history of colon cancer (Doc. 95-1 at 19). Nwaobasi ordered stool sample tests and directed Plaintiff to follow up with him in three months (Doc. 95-1 at 19; 95-2 at ¶ 3). The stool samples tested negative for blood (Doc. 95-2 at ¶ 3; 95-5 at 5). Plaintiff followed up with Nwaobasi on July 28, 2011. At that time, Nwaobasi performed a rectal exam and found no palpable mass (Doc. 95-2 at ¶ 4; 95-5 at 6). Nwaobasi changed his pain prescription back to Ibuprofen to see if that solved his stomach problems, and ordered another stool sample (*Id.*). Plaintiff never submitted that stool sample. Nwaobasi ordered another sample on August 18, 2011 (Doc. 95-2 at ¶ 5; 95-5 at 7). The August 2011 sample returned positive for blood in the stool (Doc. 95-5 at 8).

Meanwhile, Plaintiff was seen by a nurse practitioner named Kohring for his shoulder injury. She ordered an X-ray (Doc. 95-5 at p.7). However, Plaintiff was sent to Stateville on a writ from August 26, 2011 to September 21, 2011, and could not, therefore, receive the X-ray (Doc. 95-1 at 27; 95-2 at ¶ 7). When Plaintiff returned to Menard Correctional Center, Nwaobasi noted in his chart that the X-ray had not been performed and ordered another. He also ordered a colonoscopy and upper endoscopy for the blood in Plaintiff's stool (Doc. 95-2 at ¶ 8; 95-5 at 10).

X-rays were performed on Plaintiff's shoulder on October 3, 2011 (Doc. 95-5 at 10). The X-ray noted a slight down-sloping acromion, which a Dr. Yousuf noted was possibly from a rotator cuff impingement (Doc. 95-5 at 11). Defendant Shepherd met with Plaintiff on October 18, 2011, and showed Plaintiff exercises to alleviate the impingement (Doc. 95-4 at ¶ 3; 95-5 at 15).

On October 4, 2011, Plaintiff saw Defendant Shepherd (Doc. 95-4 at ¶ 2; 95-5 at 12). Shepherd diagnosed Plaintiff with possible gastroesophageal reflux disease (GERD) and prescribed Prilosec (Doc. 95-5 at 12). Shepherd also ordered a blood test to test for the H. Pylori bacteria (which causes ulcers); that test came back negative (*Id.* at 12, 14). Shepherd ordered an upper endoscopy and colonoscopy for Plaintiff, who submitted to both tests on October 20, 2011 (*Id.* at 12, 16). Biopsies were taken (*Id.* at p. 16). The colonoscopy showed Plaintiff had diverticulosis coli which can cause rectal bleeding (*Id.* at 16-17; 95-3 at ¶ 4). The gastroenterologist performing the colonoscopy recommended a high fiber diet (*Id* at p. 17). Plaintiff's other biopsies came back normal (*Id.* at 19; 95-4 at ¶ 4).

Plaintiff next saw Defendant Nwaobasi on November 10, 2011. Nwaobasi read Plaintiff's colonoscopy results (finding that he had diverticulosis coli) but he could not read the gastroenterologist's recommendations (Doc. 95-5 at 21; 95-2 at ¶ 10; 95-1 at 31). Nwaobasi made a note to clarify the recommendations but renewed Plaintiff's prescription for ibuprofen, and further prescribed Flexeril for his hip pain (*id.*; 95-2 at ¶ 11; 95-1 at 31). Plaintiff saw Defendant Shepherd on November 18, 2011, and Shepherd explained the results of the colonoscopy (Doc. 95-5 at 22; 95-4 at

¶ 5; 95-1 at 32). He advised Plaintiff to lose weight and increase his fiber and water intake, as he believed that this was the appropriate remedy for his condition (*id.*).

LEGAL STANDARDS

### 1. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012) (citing FED. R. CIV. P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* 656 F.3d 540, 547 (7th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Summary judgment has been described as the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case"—evidence on which a reasonable jury could rely. *Porter v. City of Chi.,* 700 F.3d 944, 956 (7th Cir. 2012) (citing *Goodman v Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010)). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party (here, Plaintiff). *Anderson,* 699 F.3d at 994; *Righi v. SMC Corp.,* 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011). But the district court may not resolve issues of credibility when deciding a summary

judgment motion: "Those are issues for a jury at trial, not a court on summary judgment." *Williams v. City of Chi.*, 733 F.3d 749, 752 (7th Cir. 2013).

### 2. Deliberate Indifference Standard

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). The parties do not dispute that Plaintiff's hip pain, shoulder pain, and rectal bleeding were serious medical conditions. Instead, they only argue that they were not deliberately indifferent to those conditions.

The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985); *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). A Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the officials actually drew that inference. *Greeno,* 414 F.3d at 653.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). An inmate does not have to prove that his complaints of pain were "literally ignored," only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

The Seventh Circuit has noted that the standard is "a high hurdle ... because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rosario v. Brawn*, 670 F.3d 821-22 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

## ANALYSIS

The Eighth Amendment does not require that a prisoner receive unqualified access to health care, or to demand specific care. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The record before the Court does not support an inference that Defendants acted with

deliberate indifference to any serious medical problems.

1. *Hip Pain*

Defendants argue that they are entitled to summary judgment on Plaintiff's deliberate indifference claim for his hip pain because they adequately treated his pain. Defendants point out that Plaintiff was prescribed pain medication and that X-rays of his hips were taken. Those showed moderate osteoarthritis and bullet fragments (Doc. 95-5 at 2; 95-3 at ¶ 2; 95-1 at 14-15; 95-2 at ¶ 11). As a result of the X-rays, the Defendants continued to provide Plaintiff with pain medication and provided Plaintiff with a low bunk permit. There is no evidence that any of the doctors were in any way deliberately indifferent or continued with an ineffective course of treatment that could rise to that level. *Compare Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (case survived summary judgment where evidence suggested doctor had not identified effective pain medication or the cause of tooth pain, but refused to refer to seek obvious alternative of referring inmate to dentist); *with Arnett v. Webster*, 658 F.3d 742, 759 (7th Cir. 2011) (not deliberately indifferent when took measures to address the pain by providing medication, even if ineffective, in the short time as record didn't show that "no minimally competent professional would have provided this regime of treatment"); *Ray v. Wexford Health Sources, Inc.,* 706 F.3d 864, 866 (7th Cir. 2013) (not deliberately indifferent when inmate examined often, X-rays taken, and

**medications prescribed).** Instead, the evidence indicates that the doctors provided Plaintiff with pain medication and consistently sought to diagnose his pain, to include the use of X-rays.

Plaintiff does not deny that Defendants provided him with treatment for his hip pain. In fact, Plaintiff does not dispute the treatment that was provided, and agrees that his moderate osteoarthritis was treated properly (Doc. 101 at pp. 5-6). Instead, Plaintiff argues that Defendants did not provide him any treatment for the bullet fragments in his hip. However, there is nothing in the record that indicates that the pain medication prescribed to Plaintiff was not also a proper treatment for the bullet fragments which remained in Plaintiff's hip from a past injury. Nor has Plaintiff indicated what treatment should have been provided for this injury. The evidence in the record indicates that Defendants provided him with pain medication and a low bunk permit for his hip pain. The medical records do not distinguish between medication provided for his osteoarthritis and the bullet fragments (both of which presumably caused him some pain), nor is there any indication that separate treatment for the bullet fragments should have been provided. Thus, the Court finds no evidence of deliberate indifference as to Defendants.

Finally, Plaintiff also argues that Defendants were deliberately indifferent because they did not provide him with a low gallery permit. However, there is no evidence that Plaintiff needed a low gallery permit in addition to the low bunk permit. The evidence in the record indicates that Plaintiff was provided with a low bunk permit, as well as with pain medication and a muscle relaxer for his hip pain.

There is no indication that a low gallery permit would have eased his hip pain, and in any event, that level of specificity in his treatment is beyond the pale of what the Eighth Amendment requires (Doc. 89-3 at ¶ 5). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's hip pain.

### 2. Rectal Bleeding

The Court also finds that Defendants are entitled to summary judgment re: Plaintiff's rectal bleeding. The record shows Defendants sought to identify the source of Plaintiff's rectal bleeding and provide Plaintiff with a proper course of treatment. That they did not treat it with 100% accuracy gives no rise to a constitutional violation. *See Berry*, **604 F.3d at 441 ("Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference.").**

Medical records indicate Defendant Fahim first saw Plaintiff for rectal bleeding, performed a physical exam which was unable to locate any issues, and advised Plaintiff to drink plenty of water (as Fahim thought the bleeding was caused by hemorrhoids) (Doc. 95-3 at ¶3; 95-1 at 15–16; 95-3 at ¶ 3). Defendant Nwaobasi performed an abdominal exam and ordered a stool sample to find the cause of Plaintiff's rectal bleeding (Doc. 95-2 at ¶ 3; 95-5 at 4). When no bleeding was found in the stool sample, Nwaobasi again performed an exam looking for masses; none were found, and he ordered *another* stool sample (Doc. 95-2 at ¶ 4; 95-5 at 6). He also changed Plaintiff's pain medication for his hip, believing the medication to be the source of his bleeding (*id.*). When the stool sample revealed blood, Nwaobasi

ordered a colonoscopy and endoscopy.

Defendant Shepherd saw Plaintiff for his rectal bleeding and prescribed Prilosec, thinking that Plaintiff might have gastroesophageal reflux disease (Doc. 95-4 at ¶ 2; 95-5 at 12). He also ordered a blood test to test for pylori bacteria and ordered an upper endoscopy and colonoscopy. Those tests ultimately revealed that Plaintiff had diverticulosis coli—pouches in the colon which can cause rectal bleeding (Doc. 95-4 at ¶¶ 2, 4; 95-5 at 12, 14, 16-17). The gastroenterologist recommended Plaintiff eat a high fiber diet, and Shepherd advised Plaintiff to both increase his fiber and fluids, as well as to lose weight (Doc. 95-5 at 17; 95-4 at ¶ 5).

The record indicates that Defendants were not deliberately indifferent to Plaintiff's rectal bleeding. This is not a case where Defendants continued with an ineffective course of treatment. Instead, they regularly monitored Plaintiff, seeing him on various occasions from March to November 2011, provided him with different medications to treat the bleeding, performed several different tests to identify the source of his bleeding, and ultimately directed him to change his diet in order to alleviate the problem. The Court finds no evidence that the Defendants acted with deliberate indifference to Plaintiff's rectal bleeding.

Plaintiff's argument that Defendants should somehow be liable because they did not prescribe him with a fiber supplement falls far short. Shepherd advised Plaintiff to lose weight and increase his water and fiber intake to alleviate his rectal bleeding. That Plaintiff was later prescribed a fiber supplement (by a doctor at Dixon Correctional Center), and that that supplement has helped Plaintiff's rectal

bleeding, is of little consequence to the instant analysis. Defendant Shepherd testified in an affidavit that he recommended a change in diet over supplements because there are side effects to supplements, including abdominal pain and diarrhea (Doc. 106-1 at ¶ 2). Even if negligent, medical reasons for a medical decision do not permit Eighth Amendment liability. Shepherd believed that there were adequate fiber options in the prison cafeteria to increase Plaintiff's fiber before prescribing fiber supplements (*Id.* at ¶ 3). As mentioned above, Plaintiff is not entitled to choose specific treatment, nor does a disagreement with the doctor's treatment constitute deliberate indifference. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Further, there is no evidence that the choice to pursue diet changes before prescribing fiber supplements is so far afield of professional norms of treatment as to give rise to deliberate indifference. *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). In fact, the gastroenterologist also recommended a high fiber diet—not supplements—in his report. The evidence indicates that Shepherd sought to control Plaintiff's diverticulosis coli with his diet before prescribing fiber supplements. Such decisions "as [to] whether one course of treatment is preferable to another [as is this case here], are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Thus, the Court finds that none of the Defendants were deliberately indifferent to Plaintiff's rectal bleeding.

### 3. *Shoulder Pain*

As to Plaintiff's shoulder, the record only indicates that Plaintiff received

constitutionally adequate treatment for that pain. He first saw Nurse Practitioner Kohring on August 27, 2011, and X-rays were ordered. While there was a delay in Plaintiff receiving those X-rays, the delay was due to Plaintiff being on a writ to Stateville Correctional Center from August 31, 2011, to September 21, 2011 (Doc. 95-2 at ¶ 7). Defendant Nwaobasi again ordered X-rays for Plaintiff's shoulder once he learned that the X-rays ordered by Kohring had not yet been taken (Doc. 95-2 at ¶ 8). The X-rays revealed that Plaintiff's shoulder blade might be impinging on his rotator cuff. Plaintiff then saw Defendant Shepherd, who went over the X-ray and showed Plaintiff exercises to help alleviate the impingement (Doc. 95-4 at ¶ 3; 95-5 at 13, 15). Both Shepherd and Nwaobasi continued to provide Plaintiff with pain medication. There is no evidence Defendants were deliberately indifferent to Plaintiff's injury. As with his hip and rectal bleeding, Plaintiff received continuous, adequate care that included various diagnostic tools and treatment options. Defendant Shepherd diagnosed the injury and provided Plaintiff with exercises to help the pain, and both Shepherd and Nwaobasi continued to provide Plaintiff with pain medication for his pain in general. Any delay in a diagnosis was due to Plaintiff's transfer to Stateville, and nothing in the record suggests any sort of grand scheme by Defendants to effectuate a transfer with the purpose of ignoring Plaintiff's medical concerns. The Court finds no evidence of a significant delay by the Defendants. Accordingly, the Court finds no evidence of deliberate indifference as to Plaintiff's shoulder injury.

## CONCLUSION

The Court finds that Defendants Fahim, Nwaobasi, and Shepherd are entitled to summary judgment on Plaintiff's claims for deliberate indifference regarding his hip pain, shoulder pain, and rectal bleeding. The Court **GRANTS** Defendants' Motion for Summary Judgment (**Doc. 94**). As no claims remain for trial, the Court **DIRECTS** the clerk to enter final judgment.

**IT IS SO ORDERED.**   s/ *Michael J. Reagan*
DATED: January 20, 2015   MICHAEL J. REAGAN
　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　**United States District Court**